Hear ye, hear ye, this Honorable Appellate Court for the Second District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justices Donald C. Hudson and Liam C. Brennan. The case is number 220239, Hung Shree et al., Plaintiffs' Appellants, versus the City of Elmhurst Police Department et al., Defendants' Appellees. Arguing for the Appellants, Delores C. Pino. Arguing for the Appellees, Nicholas R. Recchia and Robert J. Ursuto. All right. All right, good morning Council and thank you for joining us here this morning. Just because I'm in McHenry County and don't know my two parties on the Ursuto screen, which one of you is which? I'm Nicholas Recchia, Justice. Good morning. Good morning. My name is Robert Ursuto.  All right, so. Then Miss Pino, if you are ready, you may proceed. Thank you, Justice. Good morning to the court. I'm Delores Pino for the Plaintiffs, Hung Shree et al. This case arises from defendant Lynn Kubitschek's purchase of the house the plaintiffs were living in and her eviction of the family. And her subsequent filing of a police report, which she knew was false at the time she filed it. And which caused the ensuing criminal prosecution of Mr. Trequie for over one year for a crime he did not commit. Miss Pino, what was the false report that was made? It was that Lynn Kubitschek told the police that the plaintiff were her tenants and that the check at issue was for rent, for the last month's rent. How does that issue, how does that fact change anything that's occurred in this case? They lived in her property for at least a month. They owed her rent because they were apparently paying rent to the bank. And now it was her property. And even though it was the settlement of a litigation between the parties, it still was the main amount was $1,600 that represented almost the entire rent and $253 and maybe some cents that represented court costs. How is that fact relevant here? The fact, the memo line of the check stated that it's to settle the eviction court case, and it didn't... What do we do eviction cases for? Is there anything that we do them for other than for removing people who have not paid rent or paid their share of some housing that's in place? Well, Justice, this statute requires intent to defraud and of rental property. That's the only type of element in the statute that could be applicable here to pay for rental property. In the police report, she states that she filed the termination of the month-to-month lease with the bank on the day that the sale became final. So there was never an established landlord-tenant relationship between the defendant, Lynn Kubitschek, and the plaintiffs. The only landlord-tenant relationship was between the plaintiffs and the bank. Did she ever supply a lease between the bank and your clients in this record? Your Honor, it's not attached to the complaints. He does have it, but he did not find it in time to attach it. But it does run with the court eviction court case. I mean, the attornment letter, which is attached, states that the month-to-month lease with the bank did run from the first of the month. Your Honor, she did claim March 2012 rent on the eviction court complaint. But as a matter of law, that can't be held to be rent because the amount, the $1,600, and certainly not the $253 in court costs. Because she was not entitled as a matter of law to claim the last between 11 or 12 days in March as March rent because she filed the eviction court case on March 22nd. And in the February 17th letter, severing the lease with the bank immediately, there was no time period at which she was their landlord and they were her tenants because she severed it immediately on the day that the sale was final. But she didn't say that they could live there for free for the next 30 days, did she? No, and she told them to be out, yes, by March 20th or sooner, correct, Your Honor? So what did they owe her? What will we call what they owed her? We would call it, it is called, it actually is called a use and occupancy fee or under the, or another form of damages for lost opportunity cost type of damages. But it was not rent as a matter of law and as a matter of fact, Your Honor, because she unlawfully charged them the last 11 or 12 days in March when she was not lawfully entitled to charge them for that after she filed the eviction court case. Ms. Pino, that was a settlement that was reached in court. That was not something she charged them. That is what they agreed to. Isn't that correct? She did charge that on the eviction, on the complaint for that case, yes. She stated March 2012 rent. So it should not be held as res judicata because it doesn't match. It's not, it was not rent. All right, Ms. Pino, how long after the police report did the arrest warrant issue? It was about six months. Not long. No, I'm sorry. It was long. She had, she could not get the check cashed in July and the warrant didn't issue until March. She made the police report six months later, six months after the occurrence. She first made the police report, which we allege is false. She knew was false. Okay, but what happened then? The evidence indicates that something happened at that time. Somebody from West Chicago did some investigation independent of Ms. Kubitschek. Isn't that correct? Was it West Chicago or Elmhurst? The Elmhurst police department. I'm in the wrong town. We just had a West Chicago case. I apologize. So who, you know, what happened during that period of time? I don't know. I don't know why she waited six months to first make the police report. However, Your Honor, I do think a reasonable jury could conclude that that was not in the normal course of business for a professional real estate person to wait six months to Can I just interrupt? Wasn't she waiting for the funds to be deposited into the checking account so that the check could cash? I mean, wasn't there more than one attempt to try to cash this check? Correct. But I don't know why she waited, Your Honor. I don't know. And I think that's an open fact question. I may interrupt. Let me ask a more fundamental question. How do we charge the Kubitscheks with malicious prosecution when they're not the prosecuting agency? I mean, state's attorneys are forever telling quote unquote victims, this isn't your case. It's the state's case. They can't direct it. They can't decide whether to charge the case. They can't decide whether to dismiss the charges. It's the state that's the prosecuting agency. So how does that claim survive in that context? Because the person making the law of Illinois, the presidential law, does state that the person making a knowingly false police report is liable for malicious prosecution, unless there's evidence that the police investigation somehow superseded. But we have that here, don't we, in the record? Don't we have evidence in the record that Elmhurst did do its own investigation? The investigation that the Elmhurst police report is attached and their statements match exactly the knowingly false statements that Lynn Kubitschek told them. What was false? The Kubitscheks were tender to check and there was no money in the account. Isn't that the offense? No, there's no such offense in the state of Illinois, Your Honor. The crime of deceptive practices requires intent to defraud. Isn't the intent traditionally inferred from the fact that there was no money in the account at the time the check was written? No, there must be corroborating facts, Your Honor. Francis v. Franklin, the U.S. Supreme Court case holds that and four, five or six Illinois cases applying Francis v. Franklin to this deceptive practices act in the state of Illinois holds that there must be corroborating facts in order for that inference to be made. Isn't corroborating facts the fact that there was no money in the account before and there was no money in the account for months after? No, Your Honor, because there's many, many, many innocent non-defrauding reasons why the fact of an insufficient funds check alone might be written. Such innocent mistakes direct the court's attention to my brief at page 42 and 43, citing 34 Illinois law and practice about intent for this crime. The intent to defraud is a mental state distinct and different from the mental state of knowledge that a check will not be paid by the depository. Ms. Pito, if I could interject a question here. I understand your point, but let's not confuse the standard of proof to establish somebody's guilty with probable cause. Specifically addressing the dismissal of your account from Melissa's prosecution, as you know, very clearly, one of the elements that has to be proven to sustain that charge or that account is the absence of probable cause to proceed. Now we have the federal Seventh Circuit itself noting as it is undisputed that the check was written, knowing that it was not backed by sufficient funds. The issuing judge was entitled to infer an intent to defraud. Neither federal nor state law prohibits officers from executing an arrest warrant based on probable cause against the author of a bad check. So are you telling us that the fact that the check was written at a time when there was not insufficient funds doesn't even establish probable cause? Is that your position? It's because the facts known by Lynn Kubitschek negated intent to defraud and we pled those matters. Let's try and pin this down because I think this is crucial. At the time that the check was written, was there sufficient funds in the accounts to cover the check? Yes or no? No. So why doesn't that establish probable cause then at least? Because the facts, it's the state of mind of the maker of the police report. Well, how would the police know the state of mind of the maker? All they would know at that point is the check bounced. How are they going to know something about the state of mind? The state of mind of the person filing the police report, your honor. Lynn Kubitschek is held under Allen v. Berger as another potentially liable party under this tort of Melissa's prosecution. And it's, I mean, the state of mind of Lynn Kubitschek at the time that she filed this police report. What does her state of mind have to do with the check bouncing? Can you tell us that? And at the time that she filed the police report, the check had bounced. So she knew there was no money. She knew there was no intent to defraud that he wrote the check for other reasons, that it was not to pay for rental property, that it was not to defraud of use of rental property. It was not a regular rent check. It was the settlement for the eviction court case. And she should have gone back to the court system to have it enforced, not the police. It was not a police matter. Because she knew we pled adequate. I'm sorry, did you say something? Well, I mean, I did not perceive that's what was pled. And if that's the point you're trying to make, that's not her only option. She could put that check in the bank and then get a notice that it bounced and then do it again and get a notice that it bounced and do it again and get a notice that it bounced. The fact remains that although your client says that this is normally done, I think that was one of your statements, this is normally done in business that he is accustomed to. This is not normally done to issue a bad check for any reason. There were some errors that he wrote a letter to his own attorney explaining his intent with the check, and it's an open question whether that letter was delivered to Lynn Kupieczek's attorney. However, Your Honor, we did plead in the complaint at paragraph 27, item four. This is a very strong fact negating that Lynn Kupieczek knew that there was no intent to defraud that there were other purposes for writing the check that way. And that it states, Mr. Kui's lawyer, Mr. Carter, received a denial of his request to Lynn Kupieczek through her lawyer that she provide more documentation before Mr. Kui would put funds on the check. That's specifically, you know, an open question of fact, Your Honor, that, you know, for I believe that should be for discovery here about what Lynn Kupieczek knew. That's if she knew, you know, facts to negate intent to defraud of this check paying for rental property, then that negates the intent to defraud and meaning she did not have reasonable probable cause to believe he was committing. Are you telling us that are you telling us that Ms. Kupieczek should have known that it was a standard business practice to give somebody a check without insufficient funds? No, Your Honor. No, it's that in the facts, the specific facts of this situation in this case, she knew enough. She knew that they were not her tenants. She severed the tenancy with them the day she bought the house. She and yet she told the police that it was a check from her former tenant, a reasonable professional real estate person would not call someone they were evicting and never established a landlord tenant relationship as the former tenant. The check was tendered on the 26th. And Mr. Shree, with this supposed understanding of business practices, the only request was don't cash until the 28th, right? And it wasn't cashed until July 2nd. And in July 2nd, it bounced and then she tried to cash it again on July 20th, I think, and it bounces again. I mean, Ms. Kupieczek kind of gave him the benefit of his supposed business practice and then didn't achieve the benefit of her bargain. And I'm having a hard time understanding the relevance of, you know, whether it was a settlement check or a rent check. None of that's relevant to deceptive practices. All that's relevant is I got a check and there's no money in the account. It's relevant to deceptive practices because the facts that she knew that we pled negated both that it was a rent check, that they were her former tenants and that he had intent to defraud. And Your Honor. What was his intent? What was his intent of not to defraud? He owed the money. He gave a check. There was nothing in the checking account for months going forward. What was his intent? He wanted to he he didn't think she was going to sign the dismissal order of the eviction case, which was true. She never did. So he didn't understand the process. And he didn't I have to say maybe his eviction court lawyer did not provide him the best counsel. But there's there are letters, the letters we attached and the facts pled in our paragraph 27 are sufficient to show that she knew he was not. It wasn't intent to defraud of a rent check. It was something else. It was discussing and your honor and your honor and 34 Illinois lawn practice. There's, I'm sorry, there's a finish up because in fact your time is up. So if you want to summarize this would be a good time and you will have an opportunity for rebuttal. Thank you. It's a state and Illinois lawn practice. A check does not meet this crime. If it's written as a note. If someone is intending to deposit funds to cover it consciously writes a check for more than the balance in one's account intending to deposit funds to cover it or agreeing with the payee that the latter not presented immediately but hold it as a note. That's not that does not meet this crime. And also if there's a dispute about whether a debt is owed. And we we pled sufficient facts to show that actually both of those, a combination of the first two, it's sort of a note and intending to deposit funds to cover it once something else is done, as well as a dispute about whether the debt is owed. That's number six of paragraph 27, I mean number four of our paragraph 27 in the complaint that she knew it was about something else it was not. It was not intended to fraud. That's not was that was not his intent and we applied sufficient facts to show that she knew sufficient facts that she and she should have gone back to the eviction court where this settlement check came from for enforcement, not to the police for this crime that he did not commit. All right. Thank you very much. I believe Mr Rick yeah you are going to go forward first, and then Mr pseudo is going to follow you as the instruction that I have received. Yes, justice. Thank you. May it please the court. Council justice my name is Nicholas Ricky I'm co counsel for defendant appellees john and Lynn Kubitschek, you know, contrary to obviously what my opponent stated in her argument and I don't want to obviously rehash, a lot of this and you just as you hit, hit this on the head a lot with malicious prosecution. But briefly I'd like to take, take opportunity to say one thing and, and, you know, councils and plaintiff is relying on the same set of operative facts here, which he did, which he did in his, you know, original Second Amendment complaint, and those facts were actually copy and paste it into the appellate brief and that's what they're relying upon here so nothing's changed. You know, in the, in the last few years with regard to the operative facts, and you know getting to just your justice hit right on the head here in regard to malicious prosecution there's, there's a three pronged test. Obviously, defendant needs to bring the underlying suit maliciously and without probable cause, there needs to be termination of the underlying judicial proceeding in favor of the claimant, and there needs to be some special injury plaintiff can't prove any of these elements, and I think again, going through what, you know, has already been said here. Clearly, Lynn cupa check acted reasonably and or as an ordinary person wouldn't a similar set of circumstances. Was your client, counsel, Mr. Rekia was your client required to sign some sort of a release, or was that part of the settlement of the lawsuit. It was a, it was simply a settlement agreement. Both sides had attorneys, the settlement was worked out, and it was a settlement agreement whereby Mr tree or we was to vacate the premises he was giving an order of possession with a stay, and he was to pay the sum which was indicated on the complaint 1853. The stay was from June 7 to June 26 that was the agreement. And that was the totality of the agreement both sides were represented by attorneys. So I find it offensive that counsel would sit here today and say that he had ineffective assistance of counsel. There was no, there was no release or agreed dismissal of the law of the actual lawsuit in your reflection. No, and certainly wouldn't be because to date, I can say that Mr quiz never even made that payment. There's an outstanding judgment against him. My client could go in today and she could go seek collection on that judgment for 1853. So no, there has not been a release of that justice, but going forward. In that regard, she she seeks. She seeks police intervention which is certainly well within her right. Mr quiz passes a bad check he knowingly passes a bad check. He tells his attorney he doesn't have good funds to pass the check. Miss Miss Cooper check has her knowledge of what's going on and she has no duty to to do anything in this case contrary to what counsel saying. It's simply on Mr. We to make sure that he has the good funds from July to December. Those funds were never deposited into the account. So that's for six months. My client attempts to cash this check. The funds are never deposited as I stated. Now we're nine years later, like the funds are still not deposit for for counsel to sit here and say that Mr. Quay is not trying to defraud my client is an insult to the sport. So what is your response to Miss Pino's argument that the complaint against Mr. Quay was commenced by Miss Cuba check. Is that is that correct. Are you acknowledging that I would just I would disagree with that because because the order of the process is as you're as you're just as well aware is simply this Miss Cuba check sought sought intervention. So she she took it upon herself once the check did not clear not once but at least twice. She saw police intervention. The city of Elmhurst did their investigation. And then the city of Elmhurst Police Department makes the determination of whether or not to bring that case forward to the state's attorney's office. And then the state's attorney's office determines whether or not to charge that case. So it's not Miss Kubitschek who brings that case. It's ultimately the state's attorney's office who brings that case. Miss Kubitschek only acted as an ordinary reasonable person would in the same similar set of circumstances and sought police intervention. When again, she had no other recourse. She wasn't going to seek self-help. She wasn't going to seek any type of vigilante justice here. This is not what an ordinary person does. She sought police intervention and followed the normally normal ordinary course of steps. And ultimately, Mr. Cui was charged because the state's attorney's office obviously thought there was enough evidence to go forward. And we've obviously covered and debated at length the issue of probable cause for the proceeding. But the other element is the termination of the proceeding in favor of the plaintiff. I think Miss Pino's pointing to the fact the case, I believe, was ultimately dismissed. So what's your take on that issue? Justice, with regard to that, Illinois case law is clear that when a case is not leapfrost, it's not a final disposition of the case and will not bar another prosecution for the same case. So the acquittal is basically like a Nazi. That's people be Norris to 14, ILL 2D 92. Mr. Cui never went to trial on this case. He was never acquitted of anything. He was never determined innocent. The state in this case. And again, for reasons that's unbeknownst to anybody. I know Miss Pino in her argument tries to say, well, the state knew this and the state might have known this. We don't know why the state dismissed that case. We don't know why the state now leapfrost that case. All we know is that they were unwilling to move forward with the charges at that time. And because of that, the charges were dismissed. He was never deemed innocent. And therefore, under Illinois law, under case law, the case was never terminated in favor of him. Only it was only dismissed, never to go forward. That's where it stands. And is that that is actually the holding of this case, that it is the defendant or it is, in this case, the plaintiff's responsibility to establish why the case was dismissed. That's correct, Justice. And they haven't done that. All they did was. And I and I implore you to take judicial notice of the same set of facts and the same. I believe it was a bunch of court proceedings and calendar court dates. That shows nothing to this court as to why that case was now leapfrost. It shows that the case was set for trial a few times. The case was set for status. And ultimately, the court, excuse me, the state's attorney's office decided not to prosecute. Doesn't mean really anything other than they didn't want to go forward at that time. In regard briefly to the issue of trespass, because I do want to get to the other two points. And again, I would just implore this court just to take judicial notice of the fact that all of the allegations made of trespass in regard to this case occurred at least one day after the stay of the order of possession on the property had lapsed. So if you keep that point in mind, justices, we know and I don't want to beat a dead horse on this, but we know that the Cuba checks are the lawful owners of the property on that date. They have an order of possession from the DuPage County Court saying, hey, we own that property. So for for Mr. Cui to come in and say, hey, you guys are trespassing on me. I'm going to sue you for trespass is preposterous. They are. They are the lawful owners of that property. And Mr. Cui is the trespasser in this case. And again, Pino argues that that your client should have gone back to court to collect her fees or collect whatever we're going to call this where. And so why shouldn't your client have gone back to court to ask for the two additional days that are. You know, why? Let me let me rephrase that. Why shouldn't her client have gone back to court and asked for the two additional days that he needed in order to move because the floors were still wet on his new home? You know, shouldn't he have used the court as well to extend by two days? Absolutely. He has every right to use the court system the same way that my clients do. He chose not to. He chose to show up at the property unbeknownst to my client. He showed up and did not want to leave. And again, my client did what any prudent person would do. She called the police. She had an order of possession. It's not to say that she threw him out on her own. She called the police and saw police intervention and the police escorted him out. If Mr. Cui did not like how that went down because he was trespassing on the property, that's that gives him no recourse to sue them for trespass. He is the trespasser in this case. And that's and that's as simple as it gets. I mean, there's no really no other argument with regard to that. Finally, I just want to hit on intentional infliction, emotional distress before I pass it on to my colleague. And in that regard, justices, there has to be extreme and outrageous conduct such that all bounds of decency are met. And in this case, again, Lynn Kubitschek and John Kubitschek in particular, when acted as a reasonable, ordinary person would act. None of her calling the police, seeking intervention, trying to cash these checks. Going back to the very beginning, having a lawyer, a negotiating agreement, having an order of possession, staying that order of possession for several weeks, cashing the check several times, giving Mr. Cui opportunity after opportunity to give good funds to pass that check. All of these things taken as a totality. She certainly didn't act with any extreme and outrageous conduct. The IAEA claim woefully fails. And therefore, again, we would ask that that be upheld. A trial court decision. I'm going to pass it to you. Yes. Does local law enforcement usually assist in effectuating an order of possession? It's typically the sheriff's office. Right. Absolutely. Again, I don't know that a lay person like like Lynn Kubitschek would know that. I think she called the local municipality and Elmhurst came out and did, you know, obviously did what they did. But no, it's typically the sheriff's office. And kind of a similar point. I mean, typically, even if someone's violating an order of possession after a forceful entry and detainer action, we don't allow landlords to enter the property, even though they have a right to possession typically. Right. That is correct. And I have to go back into court and or get the sheriff out there to follow through. Absolutely. I would agree with that. Yes. I'm going to pass it over to my colleague. Thank you. Thank you. May it please the court counsel. My name is Robert Pursuto and just a touch upon what just brought up with my colleague is that that is correct. Normally, that would would take place. But in this case, there was an agreement in court with two sets of attorneys on behalf of both the parties in that he was to vacate. He didn't vacate. And they did go there on the following day, as my colleague indicated. It wasn't like she just busted in there on the date that it was due. Didn't give him time. There was an agreement, an agreed court order signed off by both parties and then stayed for several weeks in which then my client still waited a day, went to court. Excuse me, went to court and then enforced the order. So with Justice Brennan's point, sure, you don't go back in. Sometimes if the person doesn't leave, you call the sheriffs or you go back to the court. But in this case, I would say that it was different in that there was an agreed order with two sets of attorneys. And then that order was stayed to give him additional time to leave. And then he was supposed to pay the amount of money, the agreed amount of 1853, which he knew at the time he presented the check to his attorney to present to my client that there was insufficient funds. That is the very definition of being fraudulent. He was he knew he was giving a check knowing that there were not funds in there. And I would submit not only did he give the check knowing that there were not adequate funds, I would argue that he never intended to fund that check. He was just going to give that check, enter into the agreement, try and stay as long as he could and then get out. His actions speak louder than his words. So there's certainly he was not acting in good faith. And the Melissa's prosecution case is completely frivolous. She did what a reasonable, ordinary person would do in that situation when a check bounces for several, several times over several months. You call the police trespass. Once again, my colleague covered that he had no right to be there. My clients had the legal right. Once again, I'm not saying that it was through a court order. Even this was through an agreed order with two sets of attorneys where they both agreed to sign and he didn't follow through what he did. He's the one that brought this entire situation upon himself because he didn't hold up to his end of the bargain. He entered to an agreed order and he didn't follow it. So now he sues my client for trespass of their own property. It's frivolous. It's ridiculous. And then as far as the third thing, intentional infliction of emotional distress. How do you how is he emotionally distressed? He didn't fund the check. If he would have done what he was supposed to have done by following the court order he agreed to, there would never have been an issue. He would have moved out on the 26th, paid Lynn Kubitschek the money and given her the keys and they would have been on their way. Nothing would have happened. The police would have never been called. So for those reasons, I would respectfully request that you uphold the state court's ruling and that you rule in favor of the defendant police. Thank you very much for your time. Judges, we do seem to have lost Justice Hutchinson momentarily. If you'd like to move to rebuttal, you certainly may. Yes. Why don't we do that? Ms. Pino, you're entitled to address the court now and rebuttal. So you may proceed. Thank you, Justice Hudson. Mr. Quay was acting in good faith. It's not true. They don't have evidence that he was acting in bad faith in any of this. He he had a valid he had disputes. He had no intent to defraud. She was not entitled to March rent, which she claimed on the eviction court case. So both as a matter of fact and as a matter of law, that rent that check was not for rent because she she unlawfully claimed 11 or 12 days in March under claiming March rent that she was not entitled to because she had already filed the eviction court case and had told them that the lease terminated on March 20th. Yet she was unjustly charging them for 11 and 12 days in March. So that 1600 could not have been for March rent because she was not entitled to it. The check is helpful. I'm sorry, I'm on the phone now and I apologize, but my my Internet is unpredictable. That is not what she charged them. That is what they agreed to. So it doesn't. How can you say that she charged them something that that your client agreed to? It's on the on the complaint. It's what she wrote in the complaint that that that's how it ended. It ended with an agreed to order. But it represented other forms of damages not to pay for rental property because she was not entitled to that for the her rental property. Because of she she had ended the lease on March 20th and filed the eviction on March 22nd. Yet she was charging them for the rest of March. So I'm saying it's not equivalent. It's not rest judicata as rent, you know, for and they stay there. Did they stay through the end of March Council? Well. Yes, but it doesn't. But that's what she charged them for that. The check can't be rest judicata for March rent because it was not March rent. So the rest of it is not relevant. Your Honor. May I may I address the other things that they said? Within your time frame. Yes. The docket entries that I requested that the court to take a judicial notice of and we did ask to replete for the favorable termination element just by adding the SWCC. I said one that there was no deal that he made for the Nali prosecuting dismissal. But I also request leave to replete just adding those five SWCC exceptions that none of those apply to this case. And the docket entry show that your Honor under the precedential law of the Villas versus Avis case that I cited in my brief and the rich versus Baldwin case. It shows that there were two statuses for trial and the state dropped the did the Nali dismissal just after the two statuses for jury trial and under the rich both of the last and rich versus Baldwin case that is sufficient that does show that the case that the state did not have the evidence to proceed with the trial for this crime. So that does meet the favorable termination. So I would ask the court to take judicial notice of those docket entries as well as the Villas and rich versus Baldwin case for trespass trespass is unlike malicious prosecute the deceptive practices act, which cannot be interpreted as a strict liability crime by anyone the police or a person making the police report. The trespass tort is a strict liability tort, and it is irrelevant to the trespass claim here that the Cuba checks had an order of possession, their sole remedy, once they found it's an open question whether they knew the family was still going to be there. When they entered the house, but they did remain, and they invited a third party trespasser, the Elmhurst police, it was unlawful illegal for the Elmhurst police to conduct an eviction they don't have the power to do that. It's only the sheriff. It's under the county's code on page 51 of my brief it's 55. I said 735 if I could correct that 55 ILCS, the on page 51 which is, it's 55 ILCS five forward slash three dash 1619. It's the sheriff that who carries out court orders, not the municipal police, so that was unlawful, and they did both trespass by remaining there, and by inviting the third party on there. Because the trespass tort protects peaceable possession, not the ownership, the legal ownership of land and that's a very important public policy to uphold and I would ask the court to uphold that public policy, and it is a strict liability tort trespasses. And so by calling the Elmhurst police, you're saying she invited an additional trespass. Correct. Yes. Did you move on to your next point because your time is up. So, I summarize and get to the end. Thank you. This was the check was not for rent. She was not entitled to claim March rent. And so it cannot represent March rent. It represents a different form of damages, and so it can't be held to be rent for the purpose of the deceptive practices statute criminal law. Also, she knew enough that it was that to negate her reason her probable cause to believe that it was. He had intent to defraud her. It was something else she knew that he was had other questions about the settlement, her remedy was to go back to the court, not to the police because she knew he did not commit this crime. When she made the police report six months later, and it was she who decided to wait six months and I would submit to the court that a professional real estate person does not wait six months to resolve something. And a reasonable jury could easily infer conclude that that was six months of stewing over the pettiness of them taking their washer and dryer and refrigerator of the house, which was theirs. And so she decided to do this terrible thing, accuse these, these people of a crime they did not commit. So, I, we pled sufficiently the malicious prosecution toward, and the facts are here it's a meritorious case. All right. I apologize now I had to to audio sources and that made the echo. Thank you, counsel for your arguments here today, we appreciate them, and we will issue a decision in due course. We have to recess for an additional argument that I may or may not be able to attend, we'll see. I often say that the chipmunk who's running the wheel that powers my, my internet takes breaks when he doesn't tell me so that's why I lose my contact and I apologize for any inconvenience. But thank you counsel and you are now released and we will stand in recess. Thank you. Thank you.